**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| Michael Wood, | : | Case no.: 3:26-cv-278 |
| Petitioner | | Trial Case no.: 2022-CR-488<br>App. Case no.: 2022-CA-67 |
| V | : | Post Con. Case no.: 2024-CA-49 |
| WARDEN, Southeastern Correctional Institution, | | Judge Thomas M. Rose<br>Magistrate Judge Kimberly A. Jolson |
| Respondent. | : | EVIDENTIARY HEARING REQUESTED |

**PETITION FOR A WRIT OF HABEAS CORPUS**

**NOWCOMES** Petitioner, Michael Wood, *pro se* and in good faith in order to cure deficiencies specified in the Magistrate's July 30, 2026 **DEFICIENCY ORDER** (Doc #: 5) Please find, subsequent hereto, a completed Petition for Writ of Habeas Corpus in the form used by this court. Plaintiff respectfully incorporates his original filing, **APPLICATION FOR A WRIT OF HABEAS CORPUS**, and attachments (Doc #: 1) as if fully set forth hereinafter as a separate memorandum in support. See *Wood v Reynolds*, 2023 US Dist LEXIS 144987 at *6 (SD Ohio), adopted by 2024 US Dist LEXIS 83793 (SD Ohio, May 8, 2024; Rice, J.)

Scanned at: SCI
By: S. Anschutz
Date: 8-13-26
Number of pages: 34

Respectfully submitted,

[signature]

Michael Wood, pro se
Prisoner No. #: A805-984
SCI
5900 B.I.S. Road
Lancaster, Ohio 43130

**PETITION UNDER 28 USC 2254 FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | : | SOUTHERN DISTRICT OF OHIO |
| Michael Wood | : | Case No. 3:26-cv-278 |
| Southeastern Correctional Institution | : | Prisoner #: A805-984 |
| Michael Wood | v. | NORMAN ROBINSON |
| Ohio Attorney General: D. Andrew Wilson | : | |

**PETITION**

1. (a) The judgement of conviction and sentence was imposed on the Petitioner in the Court of common Pleas Clark County, Ohio.

   (b) Case No. 2022-CR-0488

2. (a) date of judgement: August 19, 2022

   (b) Date of sentencing: August 23, 2022

3. Length of sentence: An aggregate sentence of six (6) years
4. Petitioner was found guilty by on more than one count
5. Petitioner was convicted and sentenced for only one offense: RC § 4511.19 (A)(1)(b), OVI - BAC concentration above 0.08% but less than 0.17%, with a sentencing enhancement pursuant to RC § 2941.1413 (A), repeat-offender specification
6. (a) Petitioner plead: Not guilty

   (b) NA

   (c) Petitioner was tried by a jury

7. Petitioner did not testify at a pretrial hearing, trial or post-trial hearing
8. Petitioner appealed the judgement of conviction
9. (a) Petitioner appealed to the Second District Court of Appeals, Clark County

(b) Docket No. 2022-CA-67

(c) Result: Conviction and sentence were affirmed on appeal

(d) Date of result: August 25, 2023; reconsideration October 5, 2023

(e) Citation to the case: *State v Wood*, 2023-Ohio-2788 (2nd Dist)

(f) Grounds raised:

1) (a) The trial court erred by overruling Petitioner's motion to suppress evidence that was obtained in violation of the Fourth amendment, and (b) unreliable due to the actions of state actors; 2) Petitioner's rights under the Confrontation clause of the Sixth amendment were violated during his trial; 3) the OVI charge against Petitioner was unconstitutional; and 4) the jury's verdict of guilty was against the manifest weight of evidence.

(g) Petitioner sought review by a higher state court

(1) Name of court: Supreme Court of Ohio

(2) Docket no: 2023-1494

(3) Result: Discretionary appeal not allowed

(4) Date of result: April 16, 2024

(5) Case citation: *State v Wood*, 173 Ohio St 3d 1458

(6) Grounds raised:

- Under the burden shifting frame work in *State v Burnside*, the burden of the defendant to show prejudice from less-than-strict-compliance is met when the defendant presents uncontroverted, affirmative expert testimony that shows it is more likely than not that a blood sample had fermented from lack of refrigeration.

- The confrontation clause is violated when a surrogate laboratory analyst who did not perform the test of a blood sample, nor witness the procedures employed, to determine the BAC of the sample testifies as to that process and results of the test performed.
- Law enforcement must have some evidence of actual impairment by alcohol in order to convert a traffic stop for an equipment violation into a prolonged detention for an OVI investigation.
- The refusal to submit to field sobriety testing, after law enforcement has informed the person that such testing is voluntary, may not be used as evidence of impairment to justify probable cause to arrest for OVI.

(h) Petitioner did not petition for certiorari in the United States Supreme Court

10. Subsequent to the direct appeal, Petitioner filed a motion, application and petition

11. (a) **Petitioner first post-appeal filing**

(1) Name of court: Court of common Pleas Clark County, Ohio

(2) Case No. 2022-CR-0488

(3) Date of filing: October 19, 2023

(4) Nature of proceeding: Motion for leave to file and Motion for delayed new trial

(5) Grounds raised: Suppression of impeachment evidence in violation of *Brady*

(6) Petitioner did not receive a hearing where evidence was given in support

(7) Result: Petitioner's motion was denied

(8) Date of result: July 30, 2024

(b) **Petitioner's second post-appeal filing**

(1) Name of court: Court of common Pleas Clark County, Ohio

(2) Case No. 2022-CR-0488

(3) Date of filing: October 19, 2023

(4) Nature of proceeding: Petition for Post-Conviction Relief

(5) Grounds raised:

a) Audio/video evidence was tampered, b) trial counsel was ineffective, c) state witnesses committed perjury, d) Suppression of impeachment evidence in violation of *Brady*, and e) actual innocence

(6) Petitioner did not receive a hearing where evidence was given in support

(7) Result: Petitioner's petition was denied

(8) Date of result: July 30, 2024

(c) **Petitioner's third post-appeal filing**

(1) Name of court: Second District Court of Appeals, Clark County

(2) Docket No. 2022-CA-67

(3) Date of filing: October 19, 2023

(4) Nature of proceeding: Application to re-open, App. R. 26 (B)

(5) Grounds raised:

a) Trial court gave jury instruction that was unconstitutional as applied to Petitioner, b) trial counsel was ineffective, and c) prosecutor misconduct for prejudicial comments in closing

(6) Petitioner did not receive a hearing where evidence was given in support

(7) Result: Petitioner's Application was denied

(8) Date of result: January 18, 2024

(d) Applicant appealed every claim to the highest state court having jurisdiction over all

direct appeal and post-appeal action taken

12. Petitioner is currently imprisoned by the Ohio Department of Rehabilitation and Correction at Southeastern Correctional Institution (SCI) in Lancaster, Ohio. Petitioner is in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the United States. The Petitioner has exhausted the remedies available in the courts of the State of Ohio to no avail.

**GROUND ONE**:

Trial court abused its discretion by denying Petitioner's Motion to Suppress evidence unduly admitted at trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

In this case, it is uncontroverted that a blood sample was taken from Petitioner and left unrefrigerated for nearly two hours in violation of the strict compliance standard preferred in accordance with ODH regulations. Expert testimony at trial established that fermentation of the blood sample occurred inside the test-tube resulting in the creation of ethyl alcohol, inside the test-tube, that was not in Petitioner's body at the time of collection. This is a textbook example of prejudice. It is clear from the face of the record that the evidence was unreliable and prejudicial.

Under the burden shifting frame work in *State v Burnside*, the burden of the defendant to show prejudice from less-than-strict-compliance is met when the defendant shows uncontroverted, affirmative expert testimony that shows it is more likely than not that a blood sample had fermented from lack of refrigeration. The blood evidence should have been suppressed. The state failed to prove beyond-a-reasonable-doubt that the blood in Petitioner's body at the time of collection contained a BAC value that was at or above 0.08%.

Petitioner has met his burden of showing that the altered blood evidence had a substantial

and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the blood evidence altered by fermentation and admitted as evidence over objection was so prejudicial as to rendered Petitioner's trial fundamentally unfair.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was raised in the direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was not raised in a post-conviction motion or state habeas corpus

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND TWO:**

The confrontation clause is violated when a surrogate laboratory analyst who did not conduct the test of a blood sample, nor witness the procedures employed, to determine the BAC of the sample testifies as to that process and results of the test performed. Petitioner was denied his right to confront the analyst who tested the blood sample to determine its concentration of alcohol for a later criminal prosecution in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

The United States Supreme Court established a basic principal of the Confrontation Clause as applied to forensic evidence: the testimony of the person who actually conducted the test is indispensable, as a critical feature of the clause is the ability to actually examine that person. The testimony at trial regarding the test results confirming that the blood in the test-tube contained a BAC value that was at or above .08% was presented by a surrogate laboratory analyst, Treena Redmon. The state did not subpoena to testify at trial the analyst who performed those testing procedures and the record is silent as to his employment status or availability at the time of trial.

In this case, a law enforcement officer provided seized blood evidence to a state laboratory,

the Miami Valley Crime Lab (MVCL), required to assist in police investigations. Treena Redmon conducted only one of five preliminary tests on the blood sample -an initial screen for prescription drugs which was negative. The absent analyst, who actually performed a secondary test to determine the concentration of ethyl alcohol in the sample, prepared a formalized and signed certification regarding his processes and those results. Those out-of-court statements contained therein clearly qualify as testimonial for the primary purpose of being used as evidence admitted at a later criminal trial. It is clear from the face of the record that Redmon was the wrong witness.

Redmon testified that she did not do (took no part in) the physical testing to determine the BAC but merely reviewed all of the data and authored a final report. Redmon testified to the precautions (he said) he took, the observations (he said) he made, the standards (he said) he followed, the tests (he said) he performed and the results (he said) he obtained. The absent analyst' statements which were conveyed, via Redmon's testimony, enabled determination of the BAC value in the blood sample in the test-tube. Redmon's testimony was used to convince the jury of the truth of the matter asserted, that -the blood sample contained a BAC value that was at or above 0.08% but less than 0.17%- Petitioner was guilty of the offense charged in the indictment.

A state may not introduce the testimonial out-of-court statements of a forensic analyst unless he is unavailable and the defendant had a prior opportunity to cross-examine him. Neither may the state introduce those statements through a surrogate analyst who did not participate in their creation. And, nothing changes if the surrogate -as in this case- presents the out-of-court statements as the basis for her expert opinion. What was clearly established in *Smith v Arizona* by a unanimous Supreme Court was, in fact, dictated by *Melendez-Diaz* and *Bullcoming*; two decisions which were clearly established at the time Petitioner's conviction became final and applied *Crawford* in "straight forward" fashion to forensic evidence. Petitioner had the right to

*confront* the person who actually did the lab work, not his mouthpiece. (emphasis added)

The testimony from the surrogate analyst, Treena Redmon, was the was linchpin directly connecting the blood test results to the conviction for the *per se* charge which also unduly and prejudicially contributed to the jury's finding of guilt for the "under the influence" charge. The admission of the blood test results as evidence, trough the testimony of Redmon, over objection, had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the inability to cross examine the analyst who performed the test deprived Petitioner of a fundamentally fair trial.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was raised in the direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was not raised in a post-conviction motion or state habeas corpus

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND THREE**:

Law enforcement must have some evidence of actual impairment by alcohol in order to convert a traffic stop for an equipment violation into a prolonged detention for an OVI investigation. Insufficient and materially false testimony supporting an unlawful detention and OVI investigation was admitted as evidence at trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

In Ohio, it is not illegal to drive after drinking. In order to convert a routine traffic stop for a non-moving violation into an OVI investigation there must be some evidence that the person is under the influence –reasonable, articulable suspicion that the driver is actually impaired. Mere

speculation of consumption, without more is, constitutionally insufficient and heighten scrutiny of the totality of circumstances is appropriate.

Allegations conjured by the arresting official and state's key witness, Deputy Brenden McDuffie, constituting reasonable suspicion were deliberately false and materially misleading. The allegations of reasonable suspicion were the vague and dubious recitation of standardized generalization to force a fabricated false narrative (every OVI alcohol case that has ever been is based on the same pretense). There was no "'strong' odor of alcohol." Applicant's eyes were not "blood-shot and/or glassy." Applicant's speech was not "slurred." (McDuffie confirmed at the scene of the traffic stop that he had never previously interacted with Applicant and therefore had no basis for comparison). Petitioner was never in McDuffie's cruiser at the scene of the stop.

In this case, it is clear from of the record that there was no citizen's report or indication of erratic or impaired driving, motor functions, cognitive ability, dexterity issues, incoherent communication or any other evidence of actual impairment to justify an OVI investigation –the lack of numerous indicators available for consideration is profound. The deliberately false and materially misleading testimony had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the deliberately false and materially misleading statements were so prejudicial as to rendered Petitioner's trial fundamentally unfair.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was raised in the direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was not raised in a post-conviction motion or state habeas corpus

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND FOUR**:

The refusal to submit to field sobriety testing, after law enforcement has informed the person that such testing is voluntary, may not be used as evidence of impairment to justify probable cause to arrest for OVI. Evidence of refusal to perform field sobriety tests supporting an unlawful arrest for OVI was admitted at trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

No person has *any* obligation to perform standardized field sobriety tests -prove their innocence- like a roadside dancing chicken. Field sobriety tests are not constitutionally required, nor are they mandated by statute. They are not even required by the Department of Health or any traffic regulation. They are merely *procedures* established by the National Highway Traffic Administration (NHTSA). And, Petitioner had the right to not self-incriminate by innocent mishap.

A request to perform standardized field sobriety tests is a seizure subject to protections of the Fourth Amendment. There were no *actual* indicators of impairment to justify a request for Petitioner to perform standardized field sobriety tests. Field sobriety tests are used by the arresting officer in *determining whether probable cause exists to arrest*. Petitioner specifically asked the arresting official and states key witness, Deputy McDuffie, if he was "legally obligated" to perform standardized field sobriety test, which McDuffie responded explicitly: "no."

**Closing argument, Kevin Miller:**

When asked if he would submit to field sobriety tests he refused.

And, it is clear from of the face of the record that the prosecutor exploited Petitioner's good faith declination, manifestly commenting on his failure as evidence of guilt.

While NHTSA can be characterized as an "official publication," it does not carry the force of law. The testimony of Petitioner's failure to assist in a misguided, constitutionally offensive fishing expedition as probable cause to arrest for OVI had a substantial and injurious affect or

influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the evidence of Petitioner's refusal to perform field sobriety tests was so prejudicial as to render Petitioner's trial fundamentally unfair.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was raised in the direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was not raised in a post-conviction motion or state habeas corpus

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND FIVE:**

Appellate counsel failed to raise the claim that the trial court abused its discretion by overruling the Crim R 29 Motion to dismiss the refusal charge and invading the province of the jury by giving instructions that were unconstitutionally applied to Petitioner -to consider the refusal to submit to chemical testing as evidence of guilt. The jury was erroneously instructed to consider Petitioner's refusal to submit to chemical testing as evidence of being under the influence in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

It is well settled that the general assembly has authority to establish conditions upon which licenses to operate motor vehicles are issued. The Ohio Supreme Court *construes* Ohio's implied consent statute as follows:

> [**P14] R.C. 4511.19(A)(2) contains references to R.C. 4511.191, Ohio's implied-consent statute. **As part of obtaining the *privilege* to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test**, to determine the amount of intoxicating substances in the driver's body, upon the driver's arrest for DUI. (emphasis added) citing R.C. 4511.191(A)(2)

But the United States Supreme Court's decisions have not rested on the idea that these laws do what their popular name might seem to suggest -that is, create actual consent to all the searches

they authorize.

It is the driver's license that triggers implied consent. Through specific colloquy at trial regarding the issue of a Crim. R. 29 motion for the dismissal of the (A)(2) offense charged in the indictment, it is clear from the face of the record that Petitioner did not possess a valid driver's license on April 22, 2021. The prosecuting attorney discounted his obligation to prove that there was an agreement between the state of Ohio and Petitioner that would validate the "refusal" charge and attended jury instruction. It is obvious that the court even recognized, but disregarded, the reasonable probability of prejudice and harm as inevitable. The state and trial court were required to apply Ohio's implied consent statute as construed by the Ohio Supreme Court, but refused.

It is clear from the face of the record that R.C. 4511.19(A)(2), OVI under the influence with refusal element; R.C. 4511.191, Ohio's implied consent statute, and the jury instruction to *consider* Petitioner's "refusal" to submit to a chemical test as evidence that he was under the influence of alcohol, in violation of RC 4511.19 (A)(1)(a), were each unconstitutional as applied to him because he did not have a driver's license; -the privilege to drive from the state of Ohio- there was no bargain for Petitioner to renege upon. *"[T]he act of refusing a chemical test for alcohol, standing alone, does not constitute a criminal 'offense' of any kind."*

Such an instruction essentially and effectively relieved the state of its burden of proof and shifted the burden of disproving an element of the crime (being under the influence of alcohol) to Petitioner; a purely unconstitutional and ridiculous task to endeavor.

> "Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."

In evaluating the instruction, the court should not engage in a technical parsing of the language,

but instead approach the instruction in the same way that the jury did –with a common sense understanding of the instruction in light of all that took place at trial. The jury instructions, viewed as a whole, were confusing, misleading and prejudicial.

Significantly, RC 4511.19 is a strict liability offense, which are strongly disfavored, and criminal statutes are construed strictly against the state and liberally in favor of the accused. The unconstitutional jury instruction had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the unconstitutional jury instruction rendered Petitioner's trial fundamentally unfair. There is "a reasonable probability that Petitioner would have prevailed on direct appeal but for appellate counsel's failure to raise these issues."

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) Appellate counsel was ineffective on direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was raised in a post-conviction application

2) This claim was raised in an App R 26 (B) Application to re-open

- The application was filed in the Second District Court of Appeals, Clark County
- Docket no. 2022-CA-67
- Date of decision: January 18, 2024
- Result: application was denied

3) Petitioner did not receive a hearing on the application

4) Petitioner appealed this denial

5) Petitioner raised this issue on appeal

6) The issue was raised in the Supreme Court of Ohio

- Docket no. 2024-0172
- Date of decision: April 16, 2024
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND SIX**:

Appellate counsel failed to address trial counsel's ineffectiveness at trial for (1) unfulfilled promise that defendant would testify; (2) failing to object to the prosecutor's prejudicial comments in closing; (3) failing to object to the judge's prejudicial refusal instruction' and (4) failed to file a jury waiver in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts:

**1.** An attorney's opening statement is an outline of what the attorney expects the evidence to be at trial. In opening, trial counsel promised that Petitioner would testify to specific facts, as the centerpiece of his defense, and the jury would get to hear his speech for comparison purposes. It is clear from the face of the record that Petitioner did not testify, without explanation. A promise to the jury or witness testimony -especially that of the defendant- whether made in *voir dire* or an opening statement create expectations that when broken, can lead a reasonable jury to draw negative inferences. Such unfulfilled promise constitutes ineffective assistance of counsel.

2. "One of defense counsel's most important roles is to ensure that the prosecutor does not transgress the bounds of proper conduct." "General curative instructions given [only] after closings, and not right after the prejudicial statements, might not cure the prejudicial impact." In this case, it is clear from the face of the record trial counsel's failure to object to the prosecutor's repeated, direct and explicitly prejudicial comments, manifestly intended to emphasize Petitioner's failure to perform field sobriety tests, submit to chemical tests and testify at trial, allowed those comments to reach the jury uncontested and without immediate and proper admonition.

3. The unconstitutionality of the jury instruction to consider Petitioner was "under the

influence" because he "refused" chemical testing was unequivocal and clear from the face of the record. It is well recognized that a duty rests on the trial court, as well as the defendant's counsel to take special care to see that an accused rights are properly protected. Furthermore, "it is defense counsel's obligation to preserve the record by making appropriate objections to ensure that his client receives a fair trial." This failure did not absolve the judge of the same duty.

4. Trial counsel's failure to execute a jury waiver, to thereby avoid the danger of unfair prejudice by opting for a bench trial is clear from the face of the record. In the case *sub judice*, the state had to prove that Petitioner had previously been convicted of felony OVI and that he had five prior OVI convictions to prove the specification charged in the indictment. The unavoidable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. Such evidence is unfairly prejudicial where it "arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish." The limiting instruction the trial court gave to the jury was insufficient to overcome the prejudice from the prior convictions being presented to the jury. In this case the prejudice which resulted greatly outweighed the probative value.

The inactions of an incompetent and ineffective trial attorney had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the failures of trial counsel deprived Petitioner of a fundamentally fair trial. There is "a reasonable probability that Petitioner would have prevailed on direct appeal but for appellate counsel's failure to raise these issues."

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) Appellate counsel was ineffective on direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was raised in a post-conviction application

2) This claim was raised in an App R 26 (B) Application to re-open

- The application was filed in the Second District Court of Appeals, Clark County
- Docket no. 2022-CA-67
- Date of decision: January 18, 2024
- Result: application was denied

3) Petitioner did not receive a hearing on the application

4) Petitioner appealed this denial

5) Petitioner raised this issue on appeal

6) The issue was raised in the Supreme Court of Ohio

- Docket no. 2024-0172
- Date of decision: April 16, 2024
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND SEVEN**:

Appellate counsel failed to address that the prosecutor engaged in misconduct by making direct and indirect comments regarding defendant's failure to testify, (which emphasized counsel's unfulfilled promise, in conjunction with the refusal to perform field sobriety tests, submit to chemical testing) in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts

A "[p]rosecutor's comments on a defendant's refusal to testify have always been looked upon with extreme disfavor because they raise an inference of guilt from the defendant's decision to remain silent." When prosecutor comments on defendant's failure to testify, those comments

are not harmless beyond a reasonable doubt and require reversal. It is clear from the face of the record that prosecutor Miller manifestly intended to comment on Petitioner's failure to testify:

**Rebuttal argument, Kevin Miller:**

> So let's talk about some other things. In defense opening statement he said he would explain why Michael Wood refused the field sobriety tests. Did you hear any evidence to that? No, no explanation. Said he would explain why Michael Wood refused the chemical test. Did you hear any explanation as a witness on the stand because, again, what I say say, Mr. Schoenlein sys isn't evidence? This is just argument.

Tr. Tr. P. 553, line 11-18;

> But did you hear any evidence? No. So how do I give you an explanation? And can I back that up by the evidence that was presented during my case in chief. Michael Wood was impaired. He refused field sobriety tests because he knew the results would indicate that he was impaired. He refused the chemical tests because he knew the results would show that he was over the limit, that he was impaired.

Tr. Tr. P. 553, line 19-25;

> The 12 of you weren't there and you Mr. Wood was there (gesturing directly to Applicant). He knows what happened. Deputy McDuffie was there. He knows what happened. Sergeant Brown was there he knows what happened. Matthew McCarthy was there. He knows what happened.

Tr. Tr. P. 563, line 20-25. In evaluating the comments, the court should not engage in a technical parsing of the language, but instead approach the comments in the same way that the jury did – with a common sense understanding of the comments in light of all that took place at trial. Miller knew that his comments were specifically designed, would carry the force and effect of substantive evidence of guilt on the jury's deliberation and be outcome determinative to Petitioner's prejudice.

The prosecutor's comments on Petitioner's failure to testify had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the prosecutor's prejudicial comments rendered Petitioner's trial fundamentally unfair. There is "a reasonable probability that Petitioner would have prevailed on direct appeal but for appellate

counsel's failure to raise these issues."

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) Appellate counsel was ineffective on direct appeal

**(d) Post-Conviction Proceedings:**

1) This issue was raised in a post-conviction application

2) This claim was raised in an App R 26 (B) Application to re-open

- The application was filed in the Second District Court of Appeals, Clark County
- Docket no. 2022-CA-67
- Date of decision: January 18, 2024
- Result: application was denied

3) Petitioner did not receive a hearing on the application

4) Petitioner appealed this denial

5) Petitioner raised this issue on appeal

6) The issue was raised in the Supreme Court of Ohio

- Docket no. 2024-0172
- Date of decision: April 16, 2024
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND EIGHT**:

The audio/video data presented at trial was deliberately altered/purposefully tampered with by police in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) State remedies were exhausted

Recorded evidence is "real" in the sense that like all other real evidence, it is singular in

nature. Created at a unique point in time, it is the reproduction of a relevant conversation or event as that event actually unfolded on the date, time and place in question. Its connection to the original event is direct and immediate. When there is video footage of an incident, we view the facts in the light depicted by the video tape."

Before a request for discovery has been made, the duty of disclosure is as operative as the duty of preservation." In this case, the police editing, (i.e. tampering), was done purposely, in bad faith, to compromise the context and objectivity of the evidence knowing that the deliberate alterations were intended to deceive and would be outcome determinative:

- Audio/video was deliberately tampered, edited out showing that the "3-pack of Natty Daddy" was in the back seat of the car behind the driver's seat;
- Audio/video was deliberately tampered, edited to purport that Applicant was in Deputy McDuffie's cruiser at the scene of the stop when the verbal interaction actually occurred when leaving the hospital (Applicant was never in McDuffie's cruiser at the scene of the stop);
- Audio/video was deliberately tampered manipulating the interaction between Applicant and Deputy McDuffie when being placed in Sgt Brown's cruiser;
- Audio/video was deliberately tampered, edited to exclude comments made by Brown and replace them with audio recorded at a later time;
- Audio/video was deliberately tampered, edited when Applicant was taken to the home of his mother after the jail refused to "accept" him.

The purposeful editing of the audio/video data evidence had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the introduction of the altered audio/video data evidence was so prejudicial as to rendered Petitioner's trial fundamentally unfair. Petitioner was denied an evidentiary hearing to develop this fact despite providing the factual basis of the claim in state court.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) The factual basis for this claim dehors the face of the record

**(d) Post-Conviction Proceedings:**

1) This issue was raised in a post-conviction petition

2) This claim was raised in a Petition for Post-Conviction Relief RC 2§ 953.21

- The application was filed in the Court of Common Pleas Clark County
- Docket no. 2022-CR-0488
- Date of decision: July 30, 2024
- Result: Petition was denied

3) Petitioner did not receive a hearing on the Petition

4) Petitioner appealed this denial

5) Petitioner raised this issue on appeal

6) The issue was raised in the Supreme Court of Ohio

- Docket no. 2025-0909
- Date of decision: September 30, 2025
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND NINE:**

Trial counsel was deficient under *Strickland, Cronic* and *McCoy* (1) in pretrial investigation and preparation; and (2) unfulfilled promise that defendant would testify at trial which effected the entire structure of the trial proceeding in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts

**1.** Trial counsel failed to thoroughly communicate with Petitioner, investigate, discover and develop exculpatory and impeachment evidence for presentation at trial, ignoring Petitioner:

a. **Tampered audio/video:** Failed to investigate tampered audio/video evidence over

Applicant's clearly expresses wishes;

b. **Tainted blood:** Failed to have independent forensic expert perform analysis on contaminated blood sample;

c. **McDuffie bio:** Failed to obtain bio on Sheriff's Dept. web site that indicates McDuffie had minimum, basic police officer training and only seven months of road experience;

d. **Suppression hearing transcript:** Failed to show nurse committed perjury about "falling off the hospital bed" at suppression hearing and lied about it at trial;

e. **Behavioral fingerprint:** Failed to present video evidence of Applicant's unlawful arrests at the county fair *Wood v Eubanks*, 25 F 4 th 414 (6Th Cir 2022) and *State v Wood*, 21-CR-32 to compare behavior;

f. **Recklessness:** Failed to discover that McDuffie was a defendant in a wrongful death lawsuit prior to and at the time of trial.

Where, as in the present case, "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," the client has been constructively denied counsel. Prejudice is presumed where, as here, counsel's performance amounts to non-performance; he essentially ceded the case to the state.

**2.** Though raised in Petitioner's 26 (B) Application to Re-open, the appellate court explained that the factual basis for this claim dehors the record and needed to be developed. Prior to trial, Petitioner demanded and counsel agreed that he would testify as the defense's key witness and present specific testimony as the centerpiece of his own defense. An attorney's opening statement is an outline of what the attorney expects the evidence to be at trial.

Counsel promised the jury in opening that Applicant would provide specific testimony to contradict the fundamental basis of the state's case and overall theory of guilt, from his own lips and the jury would hear his speech for comparison purposes:

**SCHOENLEIN, OPENING STATEMENT:**

He has a slight slur in his speech. Mikes probably going to testify so you'll get to hear how he sounds in the video versus how he sounds in real life. You'll see if you agree.

Tr. Tr. P. 194, line 2-5;

> Mike refuses field sobriety testing. He is going to tell you why when he testifies. Mike refuses a breath machine. He's going to tell you why. He's going to tell you he's been arrested for OVI before and he blew under and they still arrested him. So what's the point if you're Mike.

Tr. Tr. P. 194, line 18-23. In evaluating the opening statement, the court should not engage in a technical parsing of the language, but instead approach the opening statement in the same way that the jury did –with a common sense understanding of the opening statement in light of all that took place at trial.

After the close of the state's case-in-chief, the prosecutor inquired as to Petitioner's intent to testify. Once counsel responded in the affirmative, the prosecutor stated his notice of intent to impeach Petitioner's testimony with his "prior criminal record." Trial counsel was unaware of the existence of a "prior criminal record," beyond prior OVI convictions, due to a lack of adequate pretrial investigation and preparation. Trial counsel's performance was deficient and he operated on an erroneous assumption due to egregious negligence.

Despite planning, preparing Petitioner to testify and promising the jury to present specific testimony, trial counsel *ordered* Petitioner not to testify due to his inability to mitigate the potential harm from the unknown impeachment evidence violating "Petitioner's right to conduct his own defense." "The Sixth Circuit has repeatedly held that trial counsel performs deficiently when they either present or choose not to present witness testimony based on inadequate investigation and preparation. "A number of circuits have held, in similar circumstances, that a lawyer's unfulfilled promise of key testimony qualifies as deficient performance under *Strickland*." Any attorney worth their salt will know the witness they intend to present.

When Petitioner was asked by the judge if he intended to testify, he began attempting to

explain that it had been his intention to testify on his own behalf but due to counsel's ineffectiveness he was in danger of unexpected prejudice, counsel interrupted him telling him in mid-sentence:

"Just say no. You don't have to explain."

Trial counsel purposely instructed Petitioner not to "explain" why he decided not to testify, after previously promising the jury that he would provide specific testimony, because it would expose his ineffectiveness. The trial court lacked comprehensive colloquy about decision not to testify. Counsel's deficient performance deprived Applicant of his right to autonomy –to testify on his own behalf.

Counsel's deficient performance was a remarkable breach of trust and it had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" counsel's failure to subject the state's case to meaningful adversarial testing and unfulfilled promise rendered Petitioner's trial fundamentally unfair. Petitioner was denied an evidentiary hearing to develop this fact despite providing the factual basis of the claim in state court.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) The factual basis for this claim dehors the face of the record

**(d) Post-Conviction Proceedings:**

1) This issue was raised in a post-conviction petition

2) This claim was raised in a Petition for Post-Conviction Relief RC 2§ 953.21

- The application was filed in the Court of Common Pleas Clark County
- Docket no. 2022-CR-0488

- Date of decision: July 30, 2024
- Result: Petition was denied

3) Petitioner did not receive a hearing on the Petition

4) Petitioner appealed this denial

5) Petitioner raised this issue on appeal

6) The issue was raised in the Supreme Court of Ohio

- Docket no. 2025-0909
- Date of decision: September 30, 2025
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND TEN**:

The key witness for the state knowingly provided false and materially misleading testimony at trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts

Statements by the arresting official and state's key witness, Deputy Brenden McDuffie, constituting reasonable suspicion were deliberately false and materially misleading. The allegations of reasonable suspicion were the vague and dubious recitation of standardized generalization to force a fabricated false narrative (every OVI alcohol case that has ever been is based on the same pretense). There was no "'strong' odor of alcohol." Applicant's eyes were not "blood-shot and/or glassy." Applicant's speech was not "slurred." (McDuffie confirmed at the scene of the traffic stop that he had never previously interacted with Applicant and therefore had no basis for comparison). Petitioner was never in McDuffie's cruiser at the scene of the stop.

The deliberately false and materially misleading testimony had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the

deliberately false and materially misleading statements were so prejudicial as to rendered Petitioner's trial fundamentally unfair.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) The factual basis for this claim dehors the face of the record

**(d) Post-Conviction Proceedings:**

3) This issue was raised in a post-conviction petition

4) This claim was raised in a Petition for Post-Conviction Relief RC 2§ 953.21

- The application was filed in the Court of Common Pleas Clark County
- Docket no. 2022-CR-0488
- Date of decision: July 30, 2024
- Result: Petition was denied

5) Petitioner did not receive a hearing on the Petition

6) Petitioner appealed this denial

7) Petitioner raised this issue on appeal

8) The issue was raised in the Supreme Court of Ohio

- Docket no. 2025-0909
- Date of decision: September 30, 2025
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND ELEVEN**:

The prosecution violated *Brady/Giglio* by purposely concealing and completely suppressing favorable impeachment evidence material to the credibility of the states key witness in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(a) Supporting facts

In March of 2023 Petitioner discovered, by chance, that at the time of his August 2022 trial, the prosecution completely suppressed that the arresting official and state's key witness, Deputy Brenden McDuffie, was a defendant in a wrongful death lawsuit. Deputy McDuffie purposely concealed and completely suppressed that while he was working in the jail, he was partly responsible for the death of a *supposed* intoxicated man in his custody and care due to *recklessness.* According to the docket for *Nolan*, original complaint filed November 2021, notice of the "waiver of service and executed" upon Deputy McDuffie related to the civil complaint was filed and docketed on January 12, 2022, (Doc #: 11), seven (7) months before trial.

For the purposes of impeaching the overall credibility of McDuffie and showing bias, the relevant evidence purposely suppressed at the time of trial is the fact that he was a defendant in a wrongful death lawsuit and the factual allegations against him contained in the original complaint (Doc #: 1) and the amended complaint (Doc #: 2). Neither Petitioner or his trial counsel had any knowledge of the essential underlying facts which formed the basis for the lawsuit nor did they suspect that the "scavenging" of public records would reveal such material evidence.

Deputy McDuffie was a defendant in a wrongful death lawsuit before, during and after the August 2022 trial. The purposeful suppression of this favorable impeachment evidence, material to the credibility of the states key witness, had a substantial and injurious affect or influence in determining the jury's verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. There is a "reasonable probability" that the deliberate suppression of this impeachment evidence deprived Petitioner of a trial that was fundamentally fair.

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) The factual basis for this claim dehors the face of the record

**(d) Post-Conviction Proceedings:**

3) This issue was raised in a post-conviction petition

4) This claim was raised in a Petition for Post-Conviction Relief RC 2§ 953.21

- The application was filed in the Court of Common Pleas Clark County
- Docket no. 2022-CR-0488
- Date of decision: July 30, 2024
- Result: Petition was denied

5) Petitioner did not receive a hearing on the Petition

6) Petitioner appealed this denial

7) Petitioner raised this issue on appeal

8) The issue was raised in the Supreme Court of Ohio

- Docket no. 2025-0909
- Date of decision: September 30, 2025
- Result: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

**GROUND TWELVE:**

<u>Petitioner is actually innocent of the charges for which the jury found him guilty</u>

(a) Supporting facts

Despite Petitioner not being on probation, parole, PRC or having any charges pending, not having any warrants, not being a fugitive from justice with a history of violence of weapons charges and not being a person of interest in any criminal investigation, prior to January 2021, the Clark County Sheriff's Department issued an ever-present BOLO (Be On Look Out) for him. The traffic stop resulting in this case occurred about thirty (30) days after a previous felony OVI charge was dismissed, after a suppression hearing, where a judge found a lack of probable cause to arrest.

The arresting officer in this case was communicating, at the scene of the stop, with the officer who unlawfully arrested me in the previous case and the prosecutor was the same in both.

On the evening of April 22, 2021, I was at the home of a friend who was battling terminal cancer, visiting and checking a mechanical problem with his lawn mower. I arrived sometime between 7-7:30 pm and left around 9:45-50 pm. Between 7-7:30 and 9:30, I drank two (2) 12 oz cans of Bud Light beer, ate a meal, urinated multiple times and smoked numerous cigarettes before traveling to New Carlisle. It is not illegal to drive after drinking. I drank responsibility, was perfectly fine to travel on the roadway and did so safely.

Deputy McDuffie *alone* arbitrarily targeted my car at the Speedway, effected the initial seizure for a non-moving violation, interacted with me and, ultimately, made the decision to arrest. I declined field sobriety tests because he was lying and I had no obligation to perform any test. Two other deputies were on scene at the time of arrest, before Sgt Brown arrived, but were not called as witnesses. *After being arrested, I was placed in Brown's cruiser.*

I was never in McDuffie's cruiser at the scene of the stop. However, they lied by saying that "the odor of alcohol coming from [my] person was so strong that it lingered in McDuffie's cruiser" when I was transferred to Brown's cruiser, at the scene of the stop, for transport to the hospital. The conversation between myself and McDuffie, which was purported to have occurred in his cruiser at the scene of the stop, actually took place after leaving the hospital. (tampered audio/video)

After getting into Brown's cruiser, McDuffie told me to "scoot to [my] right" so he could apply the seatbelt. I was already against the wall of the car and could not scoot right. He actually meant to say "scoot to your left" but gave contradictory instructions. I asked him "you mean scoot to my left, right?" "You want me to scoot to my left, correct"? "Then get it right." (edited from

audio/video) When I was asked to submit to a chemical breath test, they mischaracterize my response that "I want a lawyer. No, I'm not refusing, I want a lawyer" as a refusal.

Due to a shoulder injury, I was in pain from being cuffed and asked for relief. While Brown was removing a cuff to "double-cuff" me, due to the handcuff key hole facing my back, he was twisting the cuffs on my wrists and pulling my hands up towards the back of my head. This causing my foot to slip on the hard plastic floor and "fall forward." I got out of the cruiser to be double-cuffed and when I returned to the cruiser, the video purports to represent that I asked "you want me to scoot to my left, right," strategic editing from what was said previously to make me look like a drunk and McDuffie not like an idiot. (tampered audio/video) While Brown was on his phone at the scene of the stop, I asked "which prosecutor are you talking to" and he responded I'm not telling you." (he was talking to Kevin Miller) The video purports that he said "I am talking to my wife," a lie. (tampered audio/video)

The nurse who drew the blood, Matthew McCarty, was a New York City Police Officer at the time of the notorious Mollen Commission Investigation into Police Corruption, lied about me "almost falling off the bed" and "catching [me]." McCarty testified that he used a nonalcoholic iodine swab to clean the stick cite. However, the test results confirmed a measurable, but undetermined amount, of isopropyl alcohol was in the blood sample. Even if he did use an alcohol pad, due to the evaporation rate of isopropyl alcohol, it is impossible that a measurable amount was transferred on the tip of a hypodermic needle from the surface of my skin into the blood sample inside the test-tube. The blood in the test-tube was not reflective of the blood that was in my body.

At the time of unlawful arrest, I was a 38-year-old perfectly health man of 6'0," 180 lbs. with no history of chronic illness or any use of medications. I was wrongfully convicted based on the BAC test results, *parroted by a surrogate analyst who did not perform the test nor witness the*

*testing procedures being performed*, (emphasis added) from a blood sample containing measurable but undetermined amounts of abnormal chemical contaminants:

- Isopropyl Alcohol: $C_3 H_8 O$
- Acetaldehyde: $C_8 H_9 NO_2$
- Acetone: $C_3 H_6 O$
- Ethyl Alcohol: $C_2 H_5 OH$

It is impossible that the blood in my body contained all of these caustic chemicals. The blood sample was deliberately contaminated, tainted and altered –tampered with.

When I appeared for arraignment on the date reflected on the summons issued by McDuffie, there was no case docketed under my name. McDuffie never filed any charges in court. There was no misdemeanor arraignment the day or even at all. This case only materialized by a secret indictment after Miller received the test results from the contaminated and altered blood. I don't even know if the blood tested was actually mine or if any testing was actually ever done.

I am actually innocent because I was *not* under the influence of any mind or mood altering substance. I am actually innocent because I was *not* appreciably impaired by any mind or mood altering substance. I am actually innocent because it is *impossible* that I had isopropyl alcohol, acetaldehyde and acetone in the blood in my body. I am actually innocent because it is *impossible* that the blood in my body contained a BAC value that was at or above 0.08%. All of the abnormal containments contributed to the amount of ethyl alcohol that was in the blood sample in the test tube. Petitioner has consistently proclaimed unwavering actual innocence.

Petitioner will testify to all of these facts stated hereinabove and more. If Petitioner would have testified at trial, there is a "reasonable probability" that no reasonable jurist would have voted to convict. The lack of Petitioner's testimony at trial rendered a trial that was fundamentally unfair. Petitioner is entitled to post-conviction discovery as well as a full and fair evidentiary hearing. This case is truly "extraordinary;" the jury's verdicts and the conviction constitutes a "fundamental

miscarriage of justice."

(b) State remedies were exhausted

**(c) Direct appeal of ground one:**

1) This issue was not raised in the direct appeal

2) Appellate counsel was ineffective on direct appeal

**(d) Post-Conviction Proceedings:**

3) This issue was raised in a post-conviction petition

4) This claim was raised in a Petition for Post-Conviction Relief RC 2§ 953.21

- The application was filed in the Court of Common Pleas Clark County
- Docket no. 2022-CR-0488
- Date of decision: July 30, 2024
- Result: Petition was denied

5) Petitioner did not receive a hearing on the Petition

6) Petitioner appealed this denial

7) Petitioner raised this issue on appeal

8) The issue was raised in the Supreme Court of Ohio

- Docket no. 2025-0909
- Date of decision: September 30, 2025
- Results: Discretionary appeal not allowed

(e) Petitioner did not have knowledge that any other remedies were available

13. Additional questions about petition

(a) Yes, all grounds for relief contained hereinabove have been to the highest state court having jurisdiction

(b) No, all grounds have been fully exhausted

14. Petitioner has not filed any petition, application or motion in federal court regarding the

conviction being challenged in this petition

15. There is no other petition or appeal pending in any court challenging the current judgement of conviction

16. Name and address of attorney's who represented me;

    (a) Brock A. Schoenlein: 120 West 2nd Street, 17th Floor Dayton, Ohio 45402

    (b) same

    (c) same

    (d) same

    (e) Blaise C. Katter: 3650 Colonial Drive Hilliard, Ohio 43026

    (f) Pro se

    (g) Pro se

17. Petitioner has no other sentence; my current release date is August 21, 2028

18. TIMELINESS OF PETITION:

19. The Ohio Supreme Court denied Petitioner's discretionary appeal of his timely post-conviction appeal on September 30, 2025. 28 USC § 2244(d)(2). Therefore, Petitioner' petition is timely.

**WHEREFORE** premises considered, Applicant request that this Honorable Court:

1. Issue an **ORDER** granting an unconditional Writ of Habeas Corpus directing the immediate release of Applicant.
2. Issue an **ORDER** granting a conditional Writ of Habeas Corpus directing the State to retry Applicant, providing a fair trial, within a reasonable amount of time.
3. Issue an **ORDER** granting a conditional Writ of Habeas Corpus directing the State to provide any and all remedy and recourse that the court may deem justiciable.
4. Or **GRANT** any other relief which Petitioner may be entitled.

I, Michael Wood, declare under penalty of perjury that the foregoing is true and correct and this petition for Writ of Habeas Corpus was electronically filed on August 13, 2026.

August 13, 2026

Executed on

Signature of Petitioner

Respectfully submitted,

Michael Wood, *pro se*
SCI
5900 B.I.S. Road
Lancaster, Ohio 43130